**In re SHELL OIL REFINERY.**

Robert ADAMS, Sr.

v.

**SHELL OIL COMPANY.**

Civ. A. Nos. 88–1935, 88–2719.

United States District Court,
E.D. Louisiana.

March 20, 1991.

Supplemental Opinion May 1, 1991.

John J. Cummings, III, Liaison Counsel, Cummings, Cummings & Dudenhefer, New Orleans, La., for plaintiff.

Thomas J. Wyllie, Adams and Reese, New Orleans, La., for Shell Oil Refinery.

James F. Holmes, Christovich & Kearney, New Orleans, La., for Brown & Root U.S.A., Inc.

## ORDER AND REASONS

MENTZ, District Judge.

The subject of this Order and Reasons is the establishment of a trial plan.

## I.  BACKGROUND

The plaintiffs filed this suit for a class action against the defendants, Shell Oil Company and Brown & Root U.S.A., Inc., claiming actual and punitive damages from the May 5, 1988 explosion in the catalytic cracking unit at the Shell Oil Refinery in Norco, Louisiana.  The actual damages alleged include death, physical and mental injuries, property damage, and environmental damage.  The punitive damage claim is based on Louisiana Civil Code article 2315.3

which provides a remedy for punitive damages where "the plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous substances or toxic substances." La. Civ.Code Ann. Art. 2315.3 (West Supp. 1991).

The Court certified the suit as a class action under Federal Rule of Civil Procedure 23(b)(3) on November 28, 1988.[1] The class is defined as follows:

All persons or entities who were physically present or owned property within the Parishes of St. Charles, St. John the Baptist, St. James, Orleans or Jefferson on May 5, 1988, and who sustained injuries or damages as a result of the explosion at the Shell Oil Refinery in Norco, Louisiana.

Pursuant to Federal Rule of Civil Procedure 23(c)(4)(A)[2], the Court established two subclasses. *See* Order entered November 28, 1988, Rec.Doc. # 349. The common issues in Subclass A, which apply to all class members, are: 1) the determination of the defendants' legal liability for compensatory damages resulting from the explosion; and 2) the determination of the defendants' legal liability for punitive damages. The common issue in Subclass B, which applies to the Shell employees who were working at the time of the explosion, is Shell's liability for intentional tort.[3]

A Notice of Class Action was mailed to approximately 25,000 persons and entities who were reasonably believed to be potential class members. The notice was also published in various newspapers with a general circulation in the geographic boundaries of the class, as well as posted in the parish courthouses. The notice established a reasonable period for opting-out of the class action. *See* Notice of Class Action, Appendix A to this Order. Approximately 1,240 potential class members opted-out of the class action.

Thirty-four individual suits were filed on behalf of the plaintiffs who opted-out of the class action.[4] The Court consolidated those suits under the caption *Robert Adams, Sr. v. Shell Oil Company*, Civil Action No. 88–2719, Section "I" (E.D.La.), and then consolidated the *Adams* cases with the class action, but only for the purpose of discovery on the issues of liability and punitive damages. *See* Minute Entry entered August 1, 1989, Rec.Doc. # 795a. The Court ordered the consolidations pursuant to Federal Rule of Civil Procedure 42(a) to eliminate costly and unnecessary discovery on identical issues. Later, the Court ordered that there shall be one punitive damage trial, and consolidated all opt-out cases with the class action for trial on punitive damages. *See* Minute Entry entered April 4, 1990, Rec.Doc. # 1004f; Manual for Complex Litigation, Second, § 21.631 at 109 (1985) (Under Rule 42(a), class actions may be consolidated with cases instituted by opt-out plaintiffs.) The opt-out cases must wait to try compensatory damages until after the punitive damage trial.

The purpose of punitive damages is to punish outrageous conduct and deter such conduct in the future. *See Sharp v.*

---

1. The Court entered an order certifying the consolidated cases as a class action on September 28, 1988, but later vacated that order and made the certification subject to the Magistrate's hearing and submission of findings on the formation of subclasses and the designation of class representatives. *See* Minute Entry entered October 13, 1988, Rec.Doc. # 253; Minute Entry entered October 21, 1988, Rec.Doc. # 281. After making certain modifications to the Magistrate's recommendations, the Court entered an order certifying the class and designating the subclasses. *See* Order entered November 28, 1988, Rec.Doc. # 349.

2. Rule 23(c)(4)(A) provides that a court may limit class certification to particular common issues.

3. There were sixteen Shell employees working at the refinery at the time of the explosion. Their remedy against Shell in this case is limited by the Louisiana Worker's Compensation Law to an action for intentional tort. *See* La. Rev.Stat.Ann. § 23:1032 (West Supp.1990) (the remedies provided by the Louisiana Worker's Compensation Law are an employee's exclusive remedy against his employer except in the case of intentional acts).

4. As best as the Court can tell, there are 743 plaintiffs in the thirty-four opt-out suits.

*Daigre,* 564 So.2d 303 (La.1990) (Dennis, J., dissenting); *Creech v. Aetna Casualty & Surety Co.,* 516 So.2d 1168, 1173 (La. App.2d Cir.1987), *writ denied,* 519 So.2d 128 (La.1988). Where the defendant's conduct occurs in a single incident, such as the explosion at Shell's refinery, the defendants' conduct towards each plaintiff is identical. Thus, multiple punitive damage trials for a single course of conduct are not only redundantly time consuming and expensive, but can repetitively punish the defendant resulting in overkill.

▮ The Court is aware that the Fifth Circuit has held in two asbestos cases that multiple punitive damage awards for the same course of conduct do not violate due process. *See King v. Armstrong World Indus., Inc.,* 906 F.2d 1022 (5th Cir.1990), followed with reservations in *Edwards v. Armstrong Indus., Inc.,* 911 F.2d 1151, 54–55 (5th Cir.1990). The Fifth Circuit made these rulings despite its "misgivings," and in *King,* quoted the following passage from Judge Friendly's opinion in *Roginsky v. Richardson–Merrell, Inc.,* 378 F.2d 832, 839 (2d Cir.1967): "The legal difficulties engendered by claims for punitive damages on the part of hundreds of plaintiffs are staggering.... We have the greatest difficulty in perceiving how claims for punitive damages in such a multiplicity of actions throughout the nation can be so administered as to avoid overkill." *King,* 906 F.2d at 1033.

Nothing in the Fifth Circuit's opinion in *King* or *Edwards* precludes a single punitive trial under the circumstances in the present case. The fact that a procedure has passed constitutional muster does not necessarily mean that a departure from that procedure denies due process. *See Pacific Mutual Life Insurance Co. v. Haslip,* —— U.S. ——, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991) (Scalia, J. dissenting).

The facts in this case present a situation in which a single punitive damage trial is feasible. Unlike the asbestos cases and other cases affecting plaintiffs nationwide, and involving a course of conduct occurring over a long period of time as well as the likelihood of future claims, the present case involves a single event affecting, at one time, certain people in a five-parish area within the Eastern District of Louisiana. By virtue of the class certification, all of the claimants are before this Court. Thus, under the circumstances of this case, a single punitive damage trial is an available alternative that satisfies the best interests of both parties.

All opt-out plaintiffs were given an opportunity to become what the Court and the parties have called "double-opt-outs," by waiving the right to claim and recover punitive damages. The reason for creating this category was to accommodate those opt-out plaintiffs who objected to their claims being consolidated with the class action on the ground that it would delay resolution of their compensatory damages. The opt-out plaintiffs were advised that if they elected to double-opt out they would be given quick trial dates. The plaintiffs in fourteen opt-out cases elected to waive punitive damages and become double opt-out cases.[5] *See* Minute Entry entered May 21, 1990, Rec.Doc. 1044a. Trial dates were scheduled in the fourteen double opt-out cases. To date, eleven of those cases have settled. The remaining three cases are set for trial within the next few months.

The Court established a two-step process designed to identify the class members and obtain information about their claims. *See* Order and Reasons entered March 27, 1989, Rec.Doc. # 527. The first step, the Notice of Claim process, was designed to gather preliminary information about the class—the identity of the claimants and the general nature of each claim. The second step, the Proof of Claim process, was designed to gather detailed information about each claim, which could then be used to streamline discovery and facilitate settlement.

On March 23, 1989, the Court directed the Plaintiffs' Legal Committee (PLC) to begin the Notice of Claim procedure. *See id.* The PLC mailed and published a notice explaining that each household in which a member intends to make a claim and all

---

**5.** There are a total of fifty-eight plaintiffs in the fourteen double opt-out suits.

entities intending to make a claim must complete and timely return a Notice of Claim form postmarked not later than May 5, 1989. *See* Notice and Notice of Claim form, Appendix B(1) and B(2) to this Order.

While the PLC was in the process of mailing the Notice of Claim forms, the Court granted Shell leave to amend its answer admitting strict liability under Louisiana Civil Code article 2317. *See* Minute Entry entered April 3, 1991, Rec.Doc. # 542. Shell specifically did not admit causation, liability for intentional tort, punitive damages, toxic tort, and attorneys fees and costs. The Court ordered that the notice to be published be amended to reflect Shell's limited admission of liability. *See* Minute Entry entered April 5, 1989, Rec.Doc. # 550. In addition, the Court directed the PLC to mail a second notice titled "Final Notice," explaining Shell's limited admission of liability and extending the deadline for return of the Notice of Claim forms to June 4, 1989. *See* Final Notice, Appendix

B(3) to this Order. Approximately 10,035 Notice of Claim forms were filed.[6]

After completion of the Notice of Claim process, the parties agreed upon a 81–page form for the Proof of Claim and the protocol to be used by the PLC during the Proof of Claim stage.[7] *See* Minute Entry entered Nov. 6, 1989, Rec.Doc. # 895; Protocol entered November 8, 1989, Rec.Doc. # 898; and Amended Protocol entered April 3, 1990, Rec.Doc. # 1003.

For the past 15 months, the PLC and individual attorneys have undertaken a massive effort in completing Proof of Claim forms for every member of the class action. This procedure is almost completed. At this time, it appears that there are approximately 19,532 claimants in the class action.

During the Proof of Claim process, the parties have actively pursued discovery on liability issues. Discovery on liability will conclude on July 31, 1991. Trial is scheduled to commence on October 28, 1991.

---

**6.** By comparing social security numbers, it appears that many households filed duplicate Notice of Claim forms. Since the conclusion of the Notice of Claim period, approximately 295 more claim forms have been submitted during an extension granted on minors' claims.

**7.** Publication of the Proof of Claim form is prohibited by its length. The Proof of Claim form begins with five separate forms for individual claimant identification according to the status of claimant: competent major; minor; deceased; interdict/incompetent; business/professional. Next is a two-page summary of damage claim, followed by fourteen schedules for various types of damage and miscellaneous information: Schedule A—evacuation inconvenience; Schedule B—exposure, injuries, medical expenses and emotional distress; Schedule C—lost wages; Schedule D–1—diminution of real estate value; Schedule D–2—damage to residential real estate (owned and occupied as a residence); Schedule D–3—commercial property (including church, fraternal, residential complexes, unimproved raw land, or other property); Schedule D–4—damage to real estate (not owned but occupied as a rented residence); Schedule E—damage to personal property (including pets, crops, gardens, livestock, etc.); Schedule F—clean-up expenses; Schedule G—represented by an attorney; Schedule H—receipt of money/settlement; Schedule I—pending lawsuit information; Schedule J—criminal conviction information; Schedule K—miscellaneous. Following the schedules are re-

lease forms for medical authorization, employment information, unemployment information; social security information; and income tax information. Each claimant is required to verify his Proof of Claim form under penalty of perjury.

The PLC opened multiple claims offices in the parishes within the geographical boundaries of the class. Arrangements are made with each class member and his attorney, if he has individual counsel, to meet face-to-face with a PLC notary for review, completion, and execution of the Proof of Claim form. It was anticipated that in some instances, several appointments would be necessary. Thereafter, the Proof of Claim form is forwarded to the PLC central office and reviewed again by an attorney. After approval, the Proof of Claim form is entered into the PLC's computer database.

The PLC retains possession of all original Proof of Claim forms. The parties agreed that any properly stamped and conformed copy of the Proof of Claim form can be used for all purposes under the Federal Rules of Evidence that the original can be used. Once a week, the Court's Special Master, Nita Gorrell, inspects the newly completed Proof of Claim forms and date stamps for filing the cover page of the original and all copies. At that time, Shell may accept its copy of the Proof of Claim form. Shell agreed to pay for its own copies. Brown & Root waived its right to a copy of the Proof of Claim form. The PLC began providing Proof of Claim forms for filing on March 21, 1990.

*See* Special Master's Proposed Case Management Order entered August 9, 1990, Rec.Doc. # 1140, and Minute Entry entered August 13, 1990, Rec.Doc. # 1149 (adopting the Special Master's Proposed CMO).

## II. TRIAL PLAN

This matter shall be adjudicated in four phases. In the first phase the jury will determine the common issues of liability. If punitive liability is found, the individual compensatory damages in twenty cases and the amount of punitive damages for the class will be tried to the same jury in Phase 2. If punitive liability is not found, then we skip Phase 2 and proceed to Phase 3. In Phase 3, a different jury will determine the remaining individual compensatory damage claims. In Phase 4, the Court will compute and award punitive damages to any plaintiffs who prove actual damages.

### A. PHASE 1

In Phase I, the jury will hear evidence of the defendants' conduct leading up to and at the time of the explosion to determine the defendants' liability for compensatory and punitive damages. The jury will be asked to reach a verdict on the questions of:

1) the liability of Brown & Root for negligence and strict liability;

2) the liability of Shell for intentional tort to members of Subclass B;

3) the apportionment of liability, if any, between Shell and Brown & Root; and

4) the liability of Shell and Brown & Root for punitive damages.

Shell takes the position that after the close of evidence there should be separate closing arguments, jury instructions, and jury deliberation on each of the liability issues to reduce the risk of jury confusion about the various standards and burdens of proof that apply. Shell's position assumes that the burden of proof on punitive damages is by clear and convincing evidence, whereas the burden of proof on the negligence, strict liability and intentional tort claims is by a preponderance of the evidence. Shell also assumes that at least three distinct standards of care will apply in Phase 1.

While there can be no serious dispute that the burden of proof on negligence, strict liability, and intentional tort is by a preponderance of the evidence, the burden of proof on punitive damages has yet to be decided under Louisiana law. Before the Court decides whether it is necessary to have separate closing arguments, jury instructions, and jury deliberations, the Court must determine the applicable standards of care and burdens of proof. Since the beginning of the litigation, the parties have randomly debated these issues, particularly with respect to intentional tort and punitive damages, but they have never had a specific opportunity to address those issues either orally or in writing. Accordingly, the Court will defer ruling on whether to separate closing arguments, jury instructions and jury deliberations by specific liability issues until after the parties have submitted briefs on the applicable standards of care and burdens of proof. The Court will also defer ruling on the number of jurors and alternates to be used.

### B. PHASE 2

■ In the event that the jury finds punitive damage liability, the second phase of the trial shall proceed before the same jury on the issue of the amount of punitive damages. First, the jury will hear evidence of compensatory damages from twenty claimants in waves of five. The twenty claimants will be representative of the types of damages alleged to have been caused by the explosion.[8] After determin-

---

8. The twenty representative claimants referred to here should be distinguished from the five class representatives (three for Subclass A and two for Subclass B), who are representative of the class issues, but are not representative of the individual issues of causation and compensatory damages. At this time, the Court has not decided exactly how the twenty claimants will be selected, but anticipates a process whereby categories of damage are established by a Court-appointed statistician based, in part, upon a review of the class members' Proof of Claim forms and the opt-out complaints, and a random selection of a statistically meaningful number of claimants from each category.

ing causation and compensatory damages for each of the twenty claimants, the jury will hear evidence about the make-up of the class and the nature of the absent class members' claims[9], and other evidence relevant to determining an amount of punitive damages. *See Jenkins v. Raymark Indus., Inc.,* 782 F.2d 468, 474 (5th Cir.1986). The jury will then be asked to determine an amount of punitive damages for the class as punishment for the defendant's conduct. The jury will assess punitive damages in terms of an amount of money for each dollar of actual damages that may be awarded. *See id.* This means that each plaintiff will recover the same as other similarly situated plaintiffs. Judgments can be entered on the twenty representative claimants, but an award of punitive damages to each of the absent class members cannot be made until after their actual damages are determined in Phase 3. Punitive damages cannot be allocated until a plaintiff has proved actual damages because punitive damages are a remedy "in addition to general and special damages." *See* La.Civ.Code Ann. art. 2315.3 (West Supp.1991).

The purpose of trying the actual damages of twenty claimants in Phase 2 is to assist the jury in determining an amount of punitive damages necessary to deter and punish the defendant. Although there is no requirement in Louisiana law that punitive damages bear a relationship to compensatory damages, the jury cannot determine punitive damages in the abstract. *See Pacific Mutual Life Insurance Company v. Cleopatra Haslip,* —— U.S. ——, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991). In *Haslip,* the Court affirmed an appeal from the Supreme Court of Alabama challenging

an award of punitive damages. The Court held that the award of punitive damages did not violate due process because it was the result of the jury's application of meaningful, objective criteria, such as "the character and the degree of the wrong as shown by the evidence and necessity of preventing similar wrong." *Id.* at ——, 111 S.Ct. at 1044. In addition, Alabama's post-trial review procedures, which also applied objective criteria, ensured that the award was reasonable in amount and rational in purpose.[10] *Id.* at ——–——, 111 S.Ct. at 1045–46. Accordingly, the jury in this case will be allowed to consider the circumstances surrounding the defendant's conduct, including evidence from twenty plaintiffs representing the various types of harm caused by the defendant's conduct.

Shell argues that determining an amount of punitive damages before each of the 20,000 claimants proves actual damages violates due process. Shell reasons that only when the jury knows the total actual damages can it then determine an amount of punitive damages that bears a rational relation and is proportionate to actual damages. This same argument was rejected in *Jenkins v. Raymark Industries, Inc.,* 782 F.2d 468, 474 (5th Cir.1986). In *Raymark,* the Fifth Circuit approved a bifurcated trial plan: first, a class jury would decide all class issues including punitive damages together with the class representatives' compensatory damages; later, the individual issues of the absent class members would be resolved in mini-trials of seven to eight plaintiffs. The court specifically found that there is no constitutional impediment to determining an amount of punitive damages before the absent class members prove their actual damages:

---

**9.** This evidence shall be presented by a Court-appointed statistician.

**10.** There are seven objective criteria an Alabama court may take into account when reviewing whether a punitive damage award is excessive: "(a) whether there is a reasonable relationship between the punitive damages award and the harm likely to result from the defendant's conduct as well as the harm that actually has occurred; (b) the degree of reprehensibility of the defendant's conduct, the duration of that conduct, the defendant's awareness, any con-

cealment, and the existence and frequency of similar past conduct; (c) the profitability to the defendant of the wrongful conduct and the desirability of removing that profit and of having the defendant also sustain a loss; (d) the "financial position" of the defendant; (e) all the costs of litigation; (f) the imposition of criminal sanctions on the defendant for its conduct, these to be taken in mitigation; and (g) the existence of other civil awards against the defendant for the same conduct, these also to be taken in mitigation." *Haslip* at ——, 111 S.Ct. at 1045.

While no plaintiff may receive an award of punitive damages without proving that he suffered actual damages, the allocation need not be made concurrently with an evaluation of the defendant's conduct. The relative timing of these assessments is not critical.

.    .    .    .    .

The format in this case allows for the district court's review of the reasonableness of each plaintiff's punitive damage award and for our review of the standards which the court has applied. . . .

*Id.* at 474. The court cautioned, however, that concerns of fairness require that the jury understand the nature of the absent class members' claims:

Whatever the jury is told about the claims of the unnamed plaintiffs, it must be made aware that none of those claims have been proved; even after the class trial, they will still be mere allegations. The jury must not assume that all class members have equivalent claims: whatever injuries the unnamed plaintiffs have suffered may differ from the class representatives' as well as from one another's. Should the jury be allowed to award in the aggregate any punitive damages it finds appropriate, it must be instructed to factor in the possibility that none of the unnamed plaintiffs may have suffered *any* damages. Alternatively, the jury could be allowed to award an amount of money that each class member should receive for each dollar of actual damages awarded. Either way, the jury should understand that it must differentiate between proven and still-unproved claims, and that all class members, who recover actual damages from a defendant held liable for punitive damages, will share in the punitive award.

*Id.*

Contrary to Shell's argument, *Raymark* was not implicitly overruled by the Fifth Circuit's opinion in *In re Fibreboard*, 893 F.2d 706 (5th Cir.1990). In *Fibreboard*, the defendants sought a writ of mandamus to vacate the district court's three-phase trial plan. In Phase 1, the jury would try common defenses and punitive damages. In Phase 2, the same jury would hear evidence from 31 representative plaintiffs and expert opinions about the total damages. The jury would be asked to decide the percentage of plaintiffs exposed to each defendant's product, the percentage of claims barred by the statutes of limitation, liability and damages for the 11 class representatives, and actual damages in a lump sum for each disease category. In Phase 3, any awarded damages would be distributed.

The Fifth Circuit granted the writ and vacated Phase 2, but expressly approved Phase 1, noting that it was similar to the procedure approved in *Raymark. See id.* at 707, 712. The Fifth Circuit found that Phase 2 would violate Texas law that a plaintiff prove both causation and damages. "The inescapable fact is that the individual claims of 2,990 persons will not be presented. Rather, the claim of a unit of 2,990 persons will be presented. Given the unevenness of the individual claims, this Phase II process inevitably restates the dimensions of tort liability." *Id.* at 711. "This is the inevitable consequence of treating discrete claims as fungible claims." *Id.* at 712.

Shell argues that because the *Fibreboard* court rejected the plan to extrapolate the jury's findings of causation and damages to the absent class members, then in the case at bar, it is improper for the jury to determine an amount of punitive damages based on evidence of actual damages from less than all class members. Shell's argument overlooks the fact that unlike compensatory damages which vary from plaintiff to plaintiff, punitive damages focus on the defendant's conduct which, in this case, is *identical* for all claimants. The twenty representative claimant's actual damages will be presented to the jury, not to extrapolate compensatory damages, but to give the jury a fair context in which to assess the defendant's conduct and fix a single punitive award for the class. Any punitive award will bear a relationship to the compensatory damages because it will be assessed in terms of an amount of money for each dollar of com-

pensatory damages. In addition, because any punitive damages assessed in Phase 2 will not be awarded until after Phase 3, the Court will be able to review the reasonableness of the relationship between the punitive damages and the actual injury.

The trial plan in the case at bar is essentially the same as the one approved in *Jenkins*, except that here there is an additional safeguard in that the jury will not hear any evidence of compensatory damages unless it first finds punitive liability in Phase 1. Thus, the Court can ensure that the jury's finding on punitive liability will be based solely on the defendant's conduct and will not be influenced by evidence of the harm suffered by the plaintiffs. The bifurcation between Phase 1 and 2 will reduce the risk of jury confusion by allowing it to focus its attention on the particular issues. In addition, the bifurcation supports judicial economy because the issues in Phase 1 are outcome determinative. *See* Fed.R.Evid. 42(b); Manual for Complex Litigation § 4.12 (5th ed. 1982).

### C. PHASE 3

In Phase 3, a different jury will resolve the issues that are individual to each plaintiff. The right to a jury trial is not jeopardized by the use of a different jury in Phase 3. Wright and Miler, *Federal Practice and Procedure* § 2391. In fact, a different jury will avoid the possibility of improper influence from the evidence adduced in Phase 1 and Phase 2 on punitive damages.

Each plaintiff must individually prove injury, causation, and the amount of his damages. The defendants will be given a fair opportunity to contest the validity of these claims, but not necessarily with full-blown trials. The traditional trial procedures, methods of proof, and evidentiary rules will be abbreviated and simplified to shorten trial time. *See* H. Newberg, 2 *Newberg on Class Actions*, § 9.63 and § 9.64. "[T]he litigants and the parties should not automatically presume that adversary proceedings necessarily require the full panoply of formal procedural and evidentiary rules and jury trial rights associated with traditional nonclass litigation." *Id.* at 336.

"Pleadings, discovery, and strict application of rules of evidence associated with normal adjudication processes for individual lawsuits are often replaced with greatly simplified, informal procedures, often summary in nature, in resolving irreducible individual questions associated with a class action. This task is accomplished without sacrificing fairness to all parties to the controversy." *Id.* at 340. The Proof of Claim forms will play an important role in expediting resolution of the individual claims by abbreviating discovery, facilitating settlement, and simplifying trials.

The trials in Phase 3 will proceed in waves of five on dates to be scheduled after the conclusion of Phase 2. The claims will be scheduled for trial according to a format based on factors such as location of the claimant and/or his property at the time of the explosion, and the extent and nature of the damages. The goal is that after several waves are tried, a reasonable judgment value for each category of claims will emerge and can be used to facilitate settlement. In accordance with the holding in *Fibreboard*, 893 F.2d at 711–12, there will be no extrapolation of individual damages. Therefore, any compensatory damage claims not settled will be tried in the manner described above.

### D. PHASE 4

This is a non-jury phase in which the court will compute and award punitive damages to those plaintiffs who prove actual damages.

Accordingly,

IT IS ORDERED that this matter shall proceed to trial in accordance with the four-phase trial plan described above.

IT IS FURTHER ORDERED that the parties shall submit briefs addressing the legal standards and the burdens of proof that apply in the Phase 1 liability trial.

### SUPPLEMENTAL OPINION

In the Order and Reasons entered March 20, 1990, Rec.Doc. # 1394, the Court left open the question of the method of selection of the twenty plaintiffs whose compensatory damage claims are to be

tried in Phase 2. As explained in that opinion, the purpose of selecting a number of compensatory claims to be tried in Phase 2 is to "assist the jury in determining an amount of punitive damages necessary to deter and punish the defendant."

The twenty plaintiffs will represent various types of damages allegedly suffered by the class members. The term "represent" is intended to mean that these plaintiffs whose compensatory damages are tried in Phase 2, together with the Court expert's profile of the compensatory damages alleged by those whose claims are not tried, will indicate the kinds of damages alleged to have been caused by the explosion. Thus, the twenty cases tried in Phase 2 are "representative" in that they will illustrate by way of example, rather than stand in place of, the other plaintiffs' alleged damages. It is clear that any number of plaintiffs less than the entire class could not present the individual claims of 20,000 people. *See In re Fibreboard*, 893 F.2d 706 (5th Cir.1990).

Any attempt to select a workable number of plaintiffs to exemplify particular categories of compensatory damages is not practical given the number of claims, the diversity of the damages alleged, and the time constraints of an October, 1991 trial date. Accordingly, the Court finds that the selection shall be as follows: 100 names will be randomly selected by the Court from a pool including all present class members and single opt-out plaintiffs. The parties will be given a list of names selected, and permitted time to review their Proof of Claim forms and any other available information on the people whose names are drawn. The Court will then ask the parties to indicate *in camera* on the list each and every class member whom they will accept as one of the twenty to be tried in Phase 2.[1] The Court will compare the acceptances submitted by each party. The first twenty names that match will be the twenty whose claims will be tried in Phase 2. In the event that there are less than twenty names that match, any that do

match will be used, and the Court will select the remaining number of names, for a total of twenty names.

The Court finds that this "acceptance method," which combines elements of both randomness and control, is in the best interest of all parties. It eliminates the bias that would occur if the list were composed by each party independently selecting a certain number of names, yet it allows the parties to participate in the selection process.

Accordingly,

IT IS ORDERED that twenty plaintiffs will be selected for trial of their compensatory damages in Phase 2 according to the "acceptance method" described above.

APPENDIX A

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

In re: Shell Oil Refinery

Civil Action Number: 88–1935

Section: "I" (6)

Ref: "All Cases"

IMPORTANT NOTICE OF
CLASS ACTION

TO: ALL PERSONS OR ENTITIES WHO WERE PHYSICALLY PRESENT OR OWNED PROPERTY WITHIN THE PARISHES OF ST. JAMES, ST. JOHN THE BAPTIST, ST. CHARLES, JEFFERSON OR ORLEANS, ON MAY 5, 1988, AND WHO SUSTAINED INJURIES OR DAMAGES AS A RESULT OF THE EXPLOSION AT THE SHELL OIL REFINERY IN NORCO, LOUISIANA.

PLEASE READ THIS NOTICE
CAREFULLY.

IT MAY AFFECT YOUR RIGHTS.

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, which permits a class

---

1. The accepted names can be indicated by writing the letter "A" or "accept" next to the person's name on the list.

action to be filed by representative parties on behalf of all others who have been similarly damaged by a common event, and which requires notice of the class action to be given to all persons reasonably believed to be potential members of the class, you are hereby notified as follows:

## NATURE AND ALLEGATIONS OF THE CLASS ACTION

A class action is pending in this Court, brought against Shell Oil Company and Brown & Root USA, Inc., by certain representative parties on behalf of all persons or entities who were physically present or owned property in the parishes of St. James, St. John the Baptist, St. Charles, Jefferson or Orleans on May 5, 1988, and who or which sustained monetary damages for personal injuries and property damage of whatever kind or nature, resulting from the explosion at Shell Oil Refinery in Norco, Louisiana, on May 5, 1988. This class action also claims punitive damages allegedly resulting from the defendants' reckless disregard for public safety in the storage, handling and transportation of hazardous or toxic substances. This class action also includes claims by employees, or families of employees, of Shell who were engaged in the course of their employment with Shell Oil Company at the time of the explosion. With regard to the claims made by or for employees, the class action seeks to recover damages against Shell Oil Company based on allegations that the explosion was caused by intentional acts on the part of Shell Oil Company. All of these allegations have been denied by Shell Oil Company. Additionally, the employees, or families of employees, of Shell claim that Brown & Root was also at fault. All of these allegations have been denied by Brown & Root USA, Inc.

## ACTION OF THE COURT

### 1. *Certification of the Class*

On October 24, 1988, the Court certified this class action and ordered that notice thereof be communicated to all potential class members, informing them of the pendency and status of this class action, explaining the nature of the action and their rights with regard thereto, and directing them as to what they must do with regard to protecting their interests. That is the purpose of this notice.

### 2. *Class Representatives*

The following persons have been designated as class representatives in the class action:

A) Class representatives of plaintiff alleging personal injuries and or death occurring inside the gate of the Shell Oil facility on May 5, 1988.

Mr. Leroy Arceneaux, Jr.

Mrs. Nettie Gregoire

B) Class representatives of plaintiff alleging personal injuries and property damage outside of the gate of the Shell Oil facility on May 5, 1988.

Mr. Edward Burks

Mr. Paul Sampson

Ms. Janice Cambre

### 3. *Plaintiffs' Legal Committee*

The Court has appointed a group of attorneys, who represent persons who have already filed suits for damages resulting from the explosion, to serve as the Plaintiffs' Legal Committee, and has appointed one of these attorneys as Liaison Counsel. The Liaison Counsel is to generally supervise the Committee and to communicate with the defendants and with the Court. The names of the attorneys serving on the Plaintiffs' Legal Committee are:

Daniel E. Becnel, Jr.

John J. Cummings, III, Liaison Counsel

Calvin C. Fayard, Jr.

Wendell H. Gauthier, Jr.

J.T. Hill

Thomas Kliebert, Jr.

Stephen B. Murray

Morris Reed

W. Hugh Sibley

### 4. *Special Master*

A Special Master has been appointed by the Court to assist the Court in receiving

and supervising documentary evidence pertaining to claims. The Special Master will also be available from 9:00 a.m. to 5:00 p.m. to answer any questions you may have concerning this notice and its effect on your rights. The name and address of the Special Master is:

Nita Gorrell, Esq.

Special Master

P.O. Box 1537

Hammond, Louisiana 70404

1–800–624–2445

THIS NOTICE SHOULD NOT BE UNDERSTOOD AS AN EXPRESSION OF ANY OPINION BY THE COURT CONCERNING THE MERITS OF THE ALLEGATIONS WHICH HAVE BEEN MADE AGAINST SHELL AND BROWN & ROOT.

### YOUR RIGHTS AND CHOICES

1. If you qualify for class membership, by reason of having been physically present or owning property within the parishes of St. James, St. John the Baptist, St. Charles, Jefferson or Orleans at the time of the explosion, and if you have a claim arising out of the explosion, you will automatically be included in the class action BY TAKING NO ACTION to be excluded from it within the time period specified below.

2. If you remain in the class action (by taking no action to be excluded from it), your rights will be determined in the pending lawsuit and you will be bound by any judgment therein, whether favorable or unfavorable. You will be entitled to share in any recovery made in the class action, whether by settlement or judgment, subject to deductions for costs, expenses and attorney fees approved by the Court. However, in order to obtain any recovery you will first be required to supply such proof of your damages as the Court may direct. Further, if you have received money from *any* party for any portion of your claim you will not be permitted to recover twice for the same loss. Your interests will be protected by the attorneys representing the class but you may, if you wish, select your own attorney to represent you at your own expense or to negotiate an independent settlement subject to court approval and payment of attorney fees and litigation costs as ordered by the court.

3. If you choose NOT to be included in the class action, you will NOT be bound by any decisions or judgments therein. You will NOT be entitled to share in the proceeds of any settlement or judgment therein obtained. However, you may pursue any claim you have directly against the defendants by way of litigation or settlement independent of the class action. If you cannot settle your claim, your claim may be barred if you do not file suit prior to May 5, 1989.

4. If you DO NOT wish to be included in the class action, you MUST file a notice that you elect to be excluded BY NO LATER THAN JANUARY 2, 1989. You may do this by mailing to the address shown below, by first class mail and postmarked no later than the above date, a letter identifying yourself and stating that you desire to be excluded from the class action. You may use the form included with this notice for this purpose. You may obtain additional forms from the Special Master whose name and address is shown below.

5. NOTICE OF EXCLUSION FROM THE CLASS ACTION MUST BE MADE BY EACH INDIVIDUAL DESIRING TO BE EXCLUDED. IF YOU ARE THE LEGAL REPRESENTATIVE OF A MINOR (A PERSON UNDER THE AGE OF 18 YEARS) YOU MAY SIGN THE EXCLUSION ON BEHALF OF THE MINOR, BUT YOU MUST GIVE THE MINOR'S FULL NAME, DATE OF BIRTH AND YOUR RELATIONSHIP TO THE MINOR.

### YOUR OBLIGATIONS AS A CLASS MEMBER

If you remain a member of the class action (by not choosing to be excluded from it), you will be called upon in due course to provide detailed information concerning your claim. Your failure to provide this information in the manner required by the Court may result in your claim being disallowed. If you do not exclude yourself

from the class action, you will be sent appropriate notices with regard to filing your claim. The services of the Plaintiffs' Legal Committee will be available to assist you in preparing and filing your proof of claim.

AVAILABILITY OF FILED PAPERS

The pleadings and other papers filed in these actions are available for inspection at the office of the Clerk, United States District Court, 500 Camp Street, New Orleans, LA 70130.

Any question or inquiry you or your attorney may have concerning this notice should be made *in writing* or by telephone to the below named Special Master to the address below. DO NOT CALL OR WRITE TO THE JUDGE, CLERK OF COURT, defense attorney, or the Plaintiffs' Legal Committee members, unless such members already represent your interests individually. Address inquiries to:

Nita Gorrell, Esq.
Special Master
Shell Norco Explosion Litigation
P.O. Box 1537
Hammond, Louisiana 70404
1-800-624-2445

November 23, 1988

New Orleans, Louisiana

Clerk of Court
United States District Court
Eastern District of Louisiana
New Orleans, Louisiana 70130

APPENDIX B(1)

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

In re: Shell Oil Refinery

Civil Action Number: 88–1935

Section: "I" (6)

Ref: All Cases

IMPORTANT NOTICE TO ALL
CLASS MEMBERS

TO: ALL PERSONS OR ENTITIES WHO WERE PHYSICALLY PRESENT OR OWNED PROPERTY WITHIN THE PARISHES OF ST. JAMES, ST. JOHN THE BAPTIST, ST. CHARLES, JEFFERSON OR ORLEANS, ON MAY 5, 1988, AND WHO SUSTAINED INJURIES OR DAMAGES AS A RESULT OF THE EXPLOSION AT THE SHELL OIL REFINERY IN NORCO, LOUISIANA

PLEASE READ THIS NOTICE
CAREFULLY.
IT WILL AFFECT YOUR RIGHTS IF
YOU ARE A PERSON
OR ENTITY WHO FITS THE
DESCRIPTION ABOVE.

The next step in this class action litigation is to gather preliminary information concerning your injuries and/or damages, if any.

Pursuant to Court Order, any person or entity intending to pursue a claim in this class action must fill out and sign a "Notice of Claim" form in a timely fashion.

"Notice of Claim" forms must be mailed to the address shown below by first class mail and must be postmarked no later than May 5, 1989.

FAILURE TO TIMELY FILE A PROPERLY FILLED OUT AND SIGNED "NOTICE OF CLAIM" FORM WILL RESULT IN YOUR CLAIM BEING DISALLOWED. IF YOU HAVE NOT PREVIOUSLY FILED AN "ELECTION TO BE EXCLUDED FROM CLASS ACTION" FORM, THIS CLASS ACTION REPRESENTS YOUR ONLY OPPORTUNITY TO MAKE A CLAIM, AND FAILURE TO TIMELY FILE THE "NOTICE OF CLAIM" FORM WILL RESULT IN FORFEITURE OF YOUR RIGHTS AND DISMISSAL OF YOUR CLAIM BY THE COURT. THIS MEANS THAT IF YOU DO NOT RETURN A PROPERLY FILLED OUT AND SIGNED "NOTICE OF CLAIM" FORM, POSTMARKED NO LATER THAN MAY 5, 1989, YOUR CLAIM WILL BE FOREVER BARRED AND CAN NEVER AGAIN BE BROUGHT IN THIS OR ANY OTHER COURT.

One "Notice of Claim" form should be completed for each household in which a member intends to make a claim. Each person present in the household at the time of the explosion and intending to make a claim must be listed on the "Notice of Claim" form returned for that household. Each such person over the age of 18 must also sign the form in the appropriate space. FAILURE TO LIST ANY MEMBER OF A HOUSEHOLD ON THE "NOTICE OF CLAIM" FORM OR TO INCLUDE THAT PERSON'S SIGNATURE ON THE FORM WILL RESULT IN THE CLAIM OF THAT MEMBER OF THE HOUSEHOLD BEING DISALLOWED AND FOREVER BARRED, MEANING THAT THAT CLAIM CAN NEVER AGAIN BE BROUGHT IN THIS OR ANY OTHER COURT. This is also true of minors (persons under the age of 18), whose names must be listed on the "Notice of Claim" form in order for their claims to be considered by the Court. FAILURE TO LIST ANY MINOR ON THE "NOTICE OF CLAIM" FORM WILL RESULT IN THE CLAIM OF THAT MINOR BEING DISALLOWED AND FOREVER BARRED, MEANING THAT THAT CLAIM CAN NEVER AGAIN BE BROUGHT IN THIS OR ANY OTHER COURT. "Notice of Claim" forms filled out on behalf of minors must be signed by their legal representatives, but you must provide the minor's full name, date of birth, and your relationship to the minor in the space provided.

To protect your rights, the "Notice of Claim" form must be fully and completely filled out. You must respond to each aspect of the form which is applicable to your claim. FAILURE TO FILL OUT ANY PORTION OF THE FORM WILL BE TAKEN BY THE COURT AS A STATEMENT THAT YOU ARE NOT MAKING A CLAIM FOR THAT PARTICULAR ITEM OF DAMAGE. YOUR SIGNATURE ON THE "NOTICE OF CLAIM" FORM CONSTITUTES A REPRESENTATION THAT THE INFORMATION CONTAINED THEREIN IS TRUE AND CORRECT, UNDER PENALTY OF PERJURY.

If you do not understand or have any questions concerning the "Notice of Claim" process, you may contact the Plaintiffs' Legal Committee, 1–800–777–8884 or (504)581–1906, to assist you. You may also contact any other attorney you may have selected to represent you. DO NOT CALL OR WRITE TO THE JUDGE, CLERK OF COURT, OR DEFENSE ATTORNEYS.

The deadline for postmark of "Notice of Claim" forms is May 5, 1989. Therefore, you should respond as soon as possible upon receipt of this notice. The forms should be addressed to:

NITA GORRELL, ESQ.
SPECIAL MASTER
SHELL NORCO EXPLOSION
LITIGATION
P.O. BOX 1537
HAMMOND, LOUISIANA 70404
1–800–624–2445

March ___, 1989

New Orleans, Louisiana

Clerk of Court

United States District Court

Eastern District of Louisiana

New Orleans, Louisiana 70130

APPENDIX B(2)

# Shell/Norco Explosion Litigation

1000 SOUTH PETERS ST.
NEW ORLEANS, LOUISIANA 70130
TELEPHONE: 1-800-777-8884
OR (504) 581-1906

**THIS IS IMPORTANT !!!**

**PLEASE READ CAREFULLY !!!**

THE ENCLOSED NOTICE OF CLAIM FORM IS EXTREMELY IMPORTANT. YOUR RIGHTS IN THE SHELL/NORCO EXPLOSION ACTION WILL BE PROTECTED ONLY IF YOU FILL IN THIS FORM EXACTLY AS DIRECTED, SIGN IT AND MAIL IT BEFORE MAY 5, 1989.

If you need any assistance or if you have any questions about what you should do or what claims you should make, call the Plaintiffs' Legal Committee at 1-800-777-8884 or (504) 581-1906, or call your personal attorney and you will be given help.

Claims may be made for children and businesses.

REMEMBER:

1. Fill out and _sign_ the form.

2. All persons over 18 years must _sign_ the form.

3. Mail the form in the enclosed envelope immediately.

    (It does NOT need a stamp - postage has been prepaid.)

BE SURE YOU FILL IT OUT

AND MAIL IT BEFORE MAY 5, 1989

IN RE:  SHELL OIL REFINERY EXPLOSION                    FILE NO. _____

<u>NOTICE OF CLAIM</u>

RETURN ADDRESS:

    NITA GORRELL, ESQ.
    SPECIAL MASTER
    SHELL NORCO EXPLOSION LITIGATION
    P. O. BOX 1537
    HAMMOND, LOUISIANA  70404                    **PLEASE PRINT**
    1-800-624-2445

1.  NAME OF HEAD OF HOUSEHOLD:  _____
                             First           Middle          Last

2.  IS HEAD OF HOUSEHOLD CLAIMING TO HAVE SUSTAINED INJURIES OR DAMAGES AS A
    A RESULT OF THE EXPLOSION AT THE SHELL OIL REFINERY IN NORCO, LOUISIANA
    ON MAY 5, 1988?  _____ Yes  _____ No

3.  BIRTHDATE OF HEAD OF HOUSEHOLD: _____
    SOCIAL SECURITY NUMBER OF HEAD OF HOUSEHOLD:  _____

4.  HOME TELEPHONE NUMBER OF HEAD OF HOUSEHOLD:  _____
    WORK TELEPHONE NUMBER OF HEAD OF HOUSEHOLD:  _____

5.  PRESENT MAILING ADDRESS OF HEAD OF HOUSEHOLD:  _____
                                                  Street

    _____
      City or Town                          Apt. No.

6.  RESIDENCE LOCATION (STREET ADDRESS) AT THE TIME OF EXPLOSION AT SHELL NORCO
    REFINERY ON MAY 5, 1988 (if not the same as No. 4 above):

    _____

7.  NAME AND ADDRESS OF HEAD OF HOUSEHOLD'S EMPLOYER ON MAY 5, 1988:

    NAME:  _____

    ADDRESS:  _____

    CITY:  _____

8. LIST THE NAMES, BIRTHDATES AND SOCIAL SECURITY NUMBERS OF EVERYONE IN YOUR HOUSEHOLD AT THE TIME OF THE EXPLOSION WHO CLAIMS TO HAVE SUSTAINED INJURIES OR DAMAGE AS A RESULT OF THE EXPLOSION:

| NAME | BIRTHDATE | SOCIAL SECURITY NUMBER | RELATION TO HEAD OF HOUSEHOLD LISTED IN QUESTION #1 |
|------|-----------|------------------------|------------------------------------------------------|
|      |           |                        |                                                      |
|      |           |                        |                                                      |
|      |           |                        |                                                      |
|      |           |                        |                                                      |
|      |           |                        |                                                      |
|      |           |                        |                                                      |
|      |           |                        |                                                      |
|      |           |                        |                                                      |

CLAIMS BEING MADE BY YOU OR MEMBERS OF YOUR HOUSEHOLD AS A DIRECT RESULT OF THE EXPLOSION OF MAY 5, 1988:

| | YES | NO |
|---|---|---|
| 9. DID YOU OR ANY MEMBER OF YOUR HOUSEHOLD EVACUATE YOUR HOME AFTER THE EXPLOSION AS THE DIRECT RESULT OF THE EXPLOSION OF MAY 5, 1988? | ___ | ___ |
| 10. DID YOU OR ANY MEMBER OF YOUR HOUSEHOLD SEE A DOCTOR AS A DIRECT RESULT OF THE EXPLOSION OF MAY 5, 1988? | ___ | ___ |
| 11. WERE YOU OR ANY MEMBER OF YOUR HOUSEHOLD HOSPITALIZED AS A RESULT OF THE EXPLOSION OF MAY 5, 1988? | ___ | ___ |
| 12. DID YOU OR ANY MEMBER OF YOUR HOUSEHOLD LOSE ANY TIME FROM WORK AS A DIRECT RESULT OF THE EXPLOSION OF MAY 5, 1988? | ___ | ___ |
| 13. WAS ANY PROPERTY OWNED BY YOU OR MEMBERS OF YOUR HOUSEHOLD DAMAGED AS A RESULT OF THE EXPLOSION OF MAY 5, 1988? | ___ | ___ |

14. HAVE YOU OR ANY MEMBER OF YOUR HOUSEHOLD
RECEIVED ANY MONEY FOR THE DAMAGES OR LOSSES
BEING CLAIMED?  _____ _____

15. IF YOUR ANSWER TO QUESTION 14 WAS YES,
PLEASE DESCRIBE, IDENTIFYING THE DATE, AMOUNT,
PARTY PAYING THE MONEY, PARTY RECEIVING THE
MONEY, AND THE REASON FOR PAYMENT. _____
_____
_____

                                                     **Yes**     **No**

16. HAVE YOU OR ANY MEMBER OF YOUR HOUSEHOLD SIGNED A
RELEASE IN CONNECTION WITH THE EXPLOSION OF MAY 5,
1988?  _____ _____

17. IF YOUR ANSWER TO QUESTION 16 WAS YES, PLEASE
DESCRIBE, IDENTIFYING THE PERSON WHO SIGNED THE
RELEASE AND THE APPROXIMATE DATE THE RELEASE
WAS SIGNED. _____
_____
_____

18. ARE YOU OR ANY MEMBER OF YOUR HOUSEHOLD NOW OR HAVE
ANY OF YOU EVER BEEN REPRESENTED BY AN ATTORNEY AT
ANY POINT SINCE MAY 5, 1988 RELATIVE TO THIS
EXPLOSION?  _____ _____

19. IF SO, LIST:
ATTORNEY'S NAME: _____
TELEPHONE: _____
MAILING ADDRESS: _____

20. HAVE YOU OR ANY MEMBER OF YOUR HOUSEHOLD SIGNED A
CONTRACT WITH THE ATTORNEY LISTED IN QUESTION 19?  _____ _____

21. IF SO, APPROXIMATELY WHEN? _____

If you intend to pursue a claim in this class action, you **must** complete this
"Notice of Claim" form and mail it to the following address:

NITA GORRELL
Special Master
P. O. Box 1537
Hammond, Louisiana 70404
1-800-624-2445

THE FORM MUST BE POSTMARKED NO LATER THAN MAY 5, 1989. FAILURE TO TIMELY FILE AND SIGN A PROPERLY FILLED OUT "NOTICE OF CLAIM" FORM WILL RESULT IN YOUR CLAIM BEING DISALLOWED BY THE COURT. IF YOU HAVE NOT PREVIOUSLY FILED AN "ELECTION TO BE EXCLUDED FROM CLASS ACTION" FORM, THIS CLASS ACTION REPRESENTS YOUR ONLY OPPORTUNITY TO MAKE A CLAIM, AND FAILURE TO TIMELY FILE THE "NOTICE OF CLAIM" FORM WILL RESULT IN FORFEITURE OF YOUR RIGHTS AND DISMISSAL OF YOUR CLAIM BY THE COURT. THIS MEANS THAT IF YOU DO NOT RETURN A PROPERLY FILLED OUT AND SIGNED "NOTICE OF CLAIM" FORM, POSTMARKED NO LATER THAN MAY 5, 1989, YOUR CLAIM WILL BE FOREVER BARRED AND CAN NEVER AGAIN BE BROUGHT IN THIS OR ANY OTHER COURT.

IF YOU NEED ASSISTANCE OR HAVE ANY QUESTIONS, YOU MAY CALL THE PLAINTIFFS' LEGAL COMMITTEE AT 1-800-777-8884 or (504) 581-1906. YOU MAY ALSO CALL ANY ATTORNEY YOU MAY HAVE RETAINED. DO NOT CALL OR WRITE THE JUDGE, CLERK OF COURT, OR DEFENSE ATTORNEYS.

ADDITIONAL NOTICE OF CLAIM FORMS ARE AVAILABLE AT THE OFFICE OF THE CLERK OF COURT IN THE PARISHES OF ST. CHARLES (HAHNVILLE AND EAST BANK ANNEX), ST. JOHN THE BAPTIST, ST. JAMES, ORLEANS, JEFFERSON (GRETNA AND 1st PARISH COURT, 924 DAVID DRIVE, METAIRIE, LOUISIANA 70003), AND THE OFFICE OF THE CLERK OF COURT, UNITED STATES DISTRICT COURT, 500 CAMP STREET, NEW ORLEANS, LOUISIANA 70130

FAILURE TO LIST ANY MEMBER OF A HOUSEHOLD ON THE "NOTICE OF CLAIM" FORM OR TO INCLUDE THAT PERSON'S SIGNATURE ON THE FORM WILL RESULT IN THE CLAIM OF THAT MEMBER OF THE HOUSEHOLD BEING DISALLOWED AND FOREVER BARRED, MEANING THAT THAT CLAIM CAN NEVER AGAIN BE BROUGHT IN THIS OR ANY OTHER COURT.

Your signature on the "Notice of Claim" form constitutes a representation that the information contained therein is true and correct, under penalty of perjury. FAILURE TO FILL OUT ANY PORTION OF THE FORM WILL BE TAKEN BY THE COURT AS A STATEMENT THAT YOU ARE NOT MAKING A CLAIM FOR THAT PARTICULAR ITEM OF DAMAGE.

---

DATE

SIGNATURE OF HEAD OF HOUSEHOLD

SIGNATURE OF ALL OTHER PERSONS 18 YEARS OR OLDER AND LISTED IN RESPONSE TO QUESTION NO. 8:

---

SIGNATURE OF ASSISTING COUNSEL, IF ANY

SIGNATURE OF ASSISTING COUNSEL, IF ANY

APPENDIX B(3)

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IN RE: SHELL OIL REFINERY          CIVIL ACTION

                                    NUMBER:  88-1935

                                    SECTION: "I" (6)

                                    Ref:  All Cases

                      **F I N A L**
              ~~IMPORTANT~~ NOTICE TO ALL CLASS MEMBERS

TO:   ALL PERSONS OR ENTITIES WHO WERE PHYSICALLY PRESENT OR OWNED
PROPERTY WITHIN THE PARISHES OF ST. JAMES, ST. JOHN THE BAPTIST, ST.
CHARLES, JEFFERSON OR ORLEANS, ON MAY 5, 1983, AND WHO SUSTAINED
INJURIES OR DAMAGES AS A RESULT OF THE EXPLOSION AT THE SHELL OIL
REFINERY IN NORCO, LOUISIANA

                PLEASE READ THIS NOTICE CAREFULLY.
         IT WILL AFFECT YOUR RIGHTS IF YOU ARE A PERSON
         OR ENTITY WHO FITS THE DESCRIPTION ABOVE.

     Since May 9, 1988, this litigation has proceeded and as of October
24, 1988 a Class Action has been certified and class representatives
appointed.  The Plaintiffs' Legal Committee has been assigned by the
Court the responsibility of representing the class members on
designated issues.  The Court has also directed the Plaintiffs' Legal
Committee to participate in the Notice of Claim stage of the
proceedings.  The Plaintiffs' Legal Committee has to the extent
permitted by the Court, conducted discovery to determine the causes and
responsibility for the May 5, 1988 explosion.  There have been numerous
meetings with and/or hearings before the Court.  Prior to this time,
the Court has controlled communications between the Parties and class
members.  On March     1989, the Court directed the Plaintiffs' Legal
Committee to initiate the Notice of Claim procedure.

     As of April     1989, and without admitting negligence in this class
action litigation, Shell Oil Company has admitted that it is strictly
liable under Article 2317 of the Louisiana Civil Code and therefore
accepts financial responsibility for those compensatory damages
sustained by persons and entities in subclass A, "Outside the Gate",
(those persons and entities who sustained injuries or damages which
occurred outside the premises of the Shell Oil Refinery in Norco,
Louisiana and inside the geographical limits of the class, as defined
by the Court, i.e, the Parishes of St. James, St. Charles, St. John the
Baptist, Jefferson and Orleans) which are proven to be legally caused
by the explosion in the Catalytic Cracking Unit on May 5, 1988.
However, Shell Oil Company specifically has not admitted liability for

nor accepted financial responsibility for intentional tort damages; punitive or exemplary damages; remedies or costs under any federal or state environmental statutes; or entitlement to any costs related to future medical surveillance; and/or, entitlement to or amount of attorney fees and costs and any or all other liabilities not specifically admitted in the class action litigation.

This admission of strict liability does not relieve you of the obligation to complete and mail the "NOTICE OF CLAIM" form if you want to make a claim for injuries or damages sustained. You will still have to prove the existence, nature and extent of the damages which you complain of and the legal causation of any such damages.

The next step in this class action litigation is to gather preliminary information concerning your injuries and/or damages, if any.

Pursuant to Court Order, any person or entity intending to pursue a claim in this class action must fill out and sign "Notice of Claim" form in a timely fashion.

"Notice of Claim" forms must be mailed to the address shown below by first class mail and must be postmarked no later than May 5, 1989. June 5, 1989.

FAILURE TO TIMELY FILE A PROPERLY FILLED OUT AND SIGNED "NOTICE OF CLAIM" FORM WILL RESULT IN YOUR CLAIM BEING DISALLOWED. IF YOU HAVE NOT PREVIOUSLY FILED AN "ELECTION TO BE EXCLUDED FROM CLASS ACTION" FORM, THIS CLASS ACTION REPRESENTS YOUR ONLY OPPORTUNITY TO MAKE A CLAIM, AND FAILURE TO TIMELY FILE THE "NOTICE OF CLAIM" FORM WILL RESULT IN FORFEITURE OF YOUR RIGHTS AND DISMISSAL OF YOUR CLAIM BY THE COURT. THIS MEANS THAT IF YOU DO NOT RETURN A PROPERLY FILLED OUT AND SIGNED "NOTICE OF CLAIM" FORM POSTMARKED NO LATER THAN MAY 5, 1989, JUNE 5, 1989, YOUR CLAIM WILL BE FOREVER BARRED AND CAN NEVER AGAIN BE BROUGHT IN THIS OR ANY OTHER COURT.

One "Notice of Claim" form should be completed for each household in which a member intends to make a claim. Each person present in the household at the time of the explosion and intending to make a claim must be listed on the "Notice of Claim" form returned for that household. Each such person over the age of 18 must also sign the form in the appropriate space. FAILURE TO LIST ANY MEMBER OF A HOUSEHOLD ON THE "NOTICE OF CLAIM" FORM OR TO INCLUDE THAT PERSON'S SIGNATURE ON THE FORM WILL RESULT IN THE CLAIM OF THAT MEMBER OF THE HOUSEHOLD BEING DISALLOWED AND FOREVER BARRED, MEANING THAT THAT CLAIM CAN NEVER AGAIN BE BROUGHT IN THIS OR ANY OTHER COURT. This is also true of minors (persons under the age of 18), whose names must be listed on the "Notice of Claim" form in order for their claims to be considered by the Court. FAILURE TO LIST ANY MINOR ON THE "NOTICE OF CLAIM" FORM WILL RESULT IN THE CLAIM OF THAT MINOR BEING DISALLOWED AND FOREVER BARRED, MEANING THAT THAT CLAIM CAN NEVER AGAIN BE BROUGHT IN THIS OR ANY OTHER COURT. "Notice of Claim" forms filled out on behalf of

minors must be signed by their legal representatives, but you must provide the minor's full name, date of birth, and your relationship to the minor in the space provided.

To protect your rights, the "Notice of Claim" form must be fully and completely filled out. You must respond to each aspect of the form which is applicable to your claim. FAILURE TO FILL OUT ANY PORTION OF THE FORM WILL BE TAKEN BY THE COURT AS A STATEMENT THAT YOU ARE NOT MAKING A CLAIM FOR THAT PARTICULAR ITEM OF DAMAGE. YOUR SIGNATURE ON THE "NOTICE OF CLAIM" FORM CONSTITUTES A REPRESENTATION THAT THE INFORMATION CONTAINED THEREIN IS TRUE AND CORRECT, UNDER PENALTY OF PERJURY.

If you do not understand or have any questions concerning the "Notice of Claim" process, you may contact the Plaintiffs' Legal Committee, 1-800-777-8884 or (504) 581-1906 to assist you. You may also contact any other attorney you may have selected to represent you. DO NOT CALL OR WRITE TO THE JUDGE, CLERK OF COURT, OR DEFENSE ATTORNEYS.

June 5, 1989.

The deadline for postmark of "Notice of Claim" forms is May 5, 1989. Therefore, you should respond as soon as possible upon receipt of this notice. The forms should be addressed to:

NITA GORRELL, ESQ.
SPECIAL MASTER
SHELL NORCO EXPLOSION LITIGATION
P. O. BOX 1537
HAMMOND, LOUISIANA 70404
1-800-624-2445

May 22, 1989
New Orleans, Louisiana

Clerk of Court
United States District Court
Eastern District of Louisiana
New Orleans, Louisiana 70130

# PLAINTIFFS' LEGAL COMMITTEE
## Shell/Norco Explosion Litigation

1000 SOUTH PETERS ST.
NEW ORLEANS, LOUISIANA 70130
TELEPHONE: 1-800-777-8884
OR (504) 581-1906
May 22 ,1989

## FINAL NOTICE

**TO ALL CLASS MEMBERS WHO HAVE NOT FILED A "NOTICE OF CLAIM":**

Your time period for filing "Notice of Claim" has been extended by the Court until June 5, 1989. This is your last and final chance to notify the court of your intentions to file a claim for any and all types of damages which you or any member of your household (adult or child) believe resulted from the explosion at the Shell/Norco refinery on May 5, 1988.

If you wish to make a claim as a result of the May 5, 1988 explosion, you MUST fill out and sign the enclosed "Notice of Claim" form and mail same BEFORE JUNE 5, 1989 to:

SPECIAL MASTER
NITA GORRELL
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
POST OFFICE BOX 1537
HAMMOND, LOUISIANA 70404

IF YOU HAVE NOT FILED YOUR "NOTICE OF CLAIM" YOU MUST DO SO. Any "Notice of Claim" postmarked AFTER JUNE 5, 1989 <u>WILL NOT BE CONSIDERED</u>.

If you do not mail this form you will <u>never be able to make any type of claim against any person or entity for any type of damages or injuries of whatever nature sustained by you or members of your household as a result of the May 5 1988 Shell/Norco explosion</u>.

<u>ANY PERSON OVER THE AGE OF 18 MUST SIGN THE "NOTICE OF CLAIM"!</u>

(A CLASS MEMBER is any persons or entities who were physically present or owned property within the Parishes of St. James, St. John the Baptist, St. Charles, Jefferson or Orleans, on May 5, 1988, <u>and</u> who sustained injuries or damages as a result of the explosion at the Shell Oil Refinery in Norco, Louisiana.)

If you have already completed, signed and returned the "Notice of Claim" form, it is not necessary to complete another form. Should you have any doubt, or any questions, please call the Plaintiffs' Legal Committee at 1-800-777-8884, or (504) 581-1906 or your personal attorney.

IN RE:  SHELL OIL REFINERY EXPLOSION                    FILE NO. _____

# FINAL NOTICE OF CLAIM

RETURN ADDRESS:

NITA GORRELL, ESQ.
SPECIAL MASTER
SHELL NORCO EXPLOSION LITIGATION
P. O. BOX 1537
HAMMOND, LOUISIANA  70404                    PLEASE PRINT
1-800-624-2445

1. NAME OF HEAD OF HOUSEHOLD: _____
                              First        Middle        Last

2. IS HEAD OF HOUSEHOLD CLAIMING TO HAVE SUSTAINED INJURIES OR DAMAGES AS A
   A RESULT OF THE EXPLOSION AT THE SHELL OIL REFINERY IN NORCO, LOUISIANA
   ON MAY 5, 1988?  _____ Yes  _____ No

3. BIRTHDATE OF HEAD OF HOUSEHOLD: _____
   SOCIAL SECURITY NUMBER OF HEAD OF HOUSEHOLD: _____

4. HOME TELEPHONE NUMBER OF HEAD OF HOUSEHOLD: _____
   WORK TELEPHONE NUMBER OF HEAD OF HOUSEHOLD: _____

5. PRESENT MAILING ADDRESS OF HEAD OF HOUSEHOLD: _____
                                                          Street

   _____              _____
        City or Town                             Apt. No.

6. RESIDENCE LOCATION (STREET ADDRESS) AT THE TIME OF EXPLOSION AT SHELL NORCO
   REFINERY ON MAY 5, 1988 (If not the same as No. 5 above):

   _____

7. NAME AND ADDRESS OF HEAD OF HOUSEHOLD'S EMPLOYER ON MAY 5, 1988:

   NAME: _____

   ADDRESS: _____

   CITY: _____

8. LIST THE NAMES, BIRTHDATES AND SOCIAL SECURITY NUMBERS OF EVERYONE IN YOUR HOUSEHOLD AT THE TIME OF THE EXPLOSION WHO CLAIMS TO HAVE SUSTAINED INJURIES OR DAMAGE AS A RESULT OF THE EXPLOSION:

| NAME | BIRTHDATE | SOCIAL SECURITY NUMBER | RELATION TO HEAD OF HOUSEHOLD LISTED IN QUESTION #1 |
|------|-----------|------------------------|----------------------------------------------------|
|      |           |                        |                                                    |
|      |           |                        |                                                    |
|      |           |                        |                                                    |
|      |           |                        |                                                    |
|      |           |                        |                                                    |
|      |           |                        |                                                    |
|      |           |                        |                                                    |
|      |           |                        |                                                    |

CLAIMS BEING MADE BY YOU OR MEMBERS OF YOUR HOUSEHOLD AS A DIRECT RESULT OF THE EXPLOSION OF MAY 5, 1988:

|  |  | YES | NO |
|---|---|-----|-----|
| 9. | DID YOU OR ANY MEMBER OF YOUR HOUSEHOLD EVACUATE YOUR HOME AFTER THE EXPLOSION AS THE DIRECT RESULT OF THE EXPLOSION OF MAY 5, 1988? | _____ | _____ |
| 10. | DID YOU OR ANY MEMBER OF YOUR HOUSEHOLD SEE A DOCTOR AS A DIRECT RESULT OF THE EXPLOSION OF MAY 5, 1988? | _____ | _____ |
| 11. | WERE YOU OR ANY MEMBER OF YOUR HOUSEHOLD HOSPITALIZED AS A RESULT OF THE EXPLOSION OF MAY 5, 1988? | _____ | _____ |
| 12. | DID YOU OR ANY MEMBER OF YOUR HOUSEHOLD LOSE ANY TIME FROM WORK AS A DIRECT RESULT OF THE EXPLOSION OF MAY 5, 1988? | _____ | _____ |
| 13. | WAS ANY PROPERTY OWNED BY YOU OR MEMBERS OF YOUR HOUSEHOLD DAMAGED AS A RESULT OF THE EXPLOSION OF MAY 5, 1988? | _____ | _____ |

14. HAVE YOU OR ANY MEMBER OF YOUR HOUSEHOLD
RECEIVED ANY MONEY FOR THE DAMAGES OR LOSSES
BEING CLAIMED?

Yes _____ No _____

15. IF YOUR ANSWER TO QUESTION 14 WAS YES,
PLEASE DESCRIBE, IDENTIFYING THE DATE, AMOUNT,
PARTY PAYING THE MONEY, PARTY RECEIVING THE
MONEY, AND THE REASON FOR PAYMENT. _____
_____
_____

16. HAVE YOU OR ANY MEMBER OF YOUR HOUSEHOLD SIGNED A
RELEASE IN CONNECTION WITH THE EXPLOSION OF MAY 5,
1988?

Yes _____ No _____

17. IF YOUR ANSWER TO QUESTION 16 WAS YES, PLEASE
DESCRIBE, IDENTIFYING THE PERSON WHO SIGNED THE
RELEASE AND THE APPROXIMATE DATE THE RELEASE
WAS SIGNED. _____
_____
_____

18. ARE YOU OR ANY MEMBER OF YOUR HOUSEHOLD NOW OR HAVE
ANY OF YOU EVER BEEN REPRESENTED BY AN ATTORNEY AT
ANY POINT SINCE MAY 5, 1988 RELATIVE TO THIS
EXPLOSION?

Yes _____ No _____

19. IF SO, LIST:
ATTORNEY'S NAME: _____
TELEPHONE: _____
MAILING ADDRESS: _____

20. HAVE YOU OR ANY MEMBER OF YOUR HOUSEHOLD SIGNED A
CONTRACT WITH THE ATTORNEY LISTED IN QUESTION 19?

Yes _____ No _____

21. IF SO, APPROXIMATELY WHEN? _____

If you intend to pursue a claim in this class action, you must complete this
"Notice of Claim" form and mail it to the following address:

NITA GORRELL
Special Master
P. O. Box 1537
Hammond, Louisiana  70404
1-800-624-2445

THE FORM MUST BE POSTMARKED NO LATER THAN JUNE 5, 1989 FAILURE TO TIMELY FILE AND SIGN A PROPERLY FILLED OUT "NOTICE OF CLAIM" FORM WILL RESULT IN YOUR CLAIM BEING DISALLOWED BY THE COURT. IF YOU HAVE NOT PREVIOUSLY FILED AN "ELECTION TO BE EXCLUDED FROM CLASS ACTION" FORM, THIS CLASS ACTION REPRESENTS YOUR ONLY OPPORTUNITY TO MAKE A CLAIM, AND FAILURE TO TIMELY FILE THE "NOTICE OF CLAIM" FORM WILL RESULT IN FORFEITURE OF YOUR RIGHTS AND DISMISSAL OF YOUR CLAIM BY THE COURT. THIS MEANS THAT IF YOU DO NOT RETURN A PROPERLY FILLED OUT AND SIGNED "NOTICE OF CLAIM" FORM, POSTMARKED NO LATER THAN JUNE 5, 1989 YOUR CLAIM WILL BE FOREVER BARRED AND CAN NEVER AGAIN BE BROUGHT IN THIS OR ANY OTHER COURT.

IF YOU NEED ASSISTANCE OR HAVE ANY QUESTIONS, YOU MAY CALL THE PLAINTIFFS' LEGAL COMMITTEE AT 1-800-777-8884 or (504) 581-1906. MAY ALSO CALL ANY ATTORNEY YOU MAY HAVE RETAINED. DO NOT CALL OR WRITE THE JUDGE, CLERK OF COURT, OR DEFENSE ATTORNEYS.

ADDITIONAL NOTICE OF CLAIM FORMS ARE AVAILABLE AT THE OFFICE OF THE CLERK OF COURT IN THE PARISHES OF ST. CHARLES (HAHNVILLE AND EAST BANK ANNEX), ST. JOHN THE BAPTIST, ST. JAMES, ORLEANS, JEFFERSON (GRETNA AND 1st PARISH COURT, 924 DAVID DRIVE, METAIRIE, LOUISIANA 70003), AND THE OFFICE OF THE CLERK OF COURT, UNITED STATES DISTRICT COURT, 500 CAMP STREET, NEW ORLEANS, LOUISIANA 70130

FAILURE TO LIST ANY MEMBER OF A HOUSEHOLD ON THE "NOTICE OF CLAIM" FORM OR TO INCLUDE THAT PERSON'S SIGNATURE ON THE FORM WILL RESULT IN THE CLAIM OF THAT MEMBER OF THE HOUSEHOLD BEING DISALLOWED AND FOREVER BARRED, MEANING THAT THAT CLAIM CAN NEVER AGAIN BE BROUGHT IN THIS OR ANY OTHER COURT.

Your signature on the "Notice of Claim" form constitutes a representation that the information contained therein is true and correct, under penalty of perjury. FAILURE TO FILL OUT ANY PORTION OF THE FORM WILL BE TAKEN BY THE COURT AS A STATEMENT THAT YOU ARE NOT MAKING A CLAIM FOR THAT PARTICULAR ITEM OF DAMAGE.

| DATE | SIGNATURE OF HEAD OF HOUSEHOLD |

SIGNATURE OF ALL OTHER PERSONS 18 YEARS OR OLDER AND LISTED IN RESPONSE TO QUESTION NO. 8:

SIGNATURE OF ASSISTING COUNSEL, IF ANY

SIGNATURE OF ASSISTING COUNSEL, IF ANY